IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RENEA TURNER, | : | |
| Plaintiff, | | Case No. 3:21-cv-288 |
| v. | : | Judge Walter H. Rice |
| COX ENTERPRISES, INC. *et al.*, | | |
| | : | |
| Defendants. | | |

---

DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY JUDGMENT AND OVERRULING AS MOOT DISMISSAL FOR FAILURE TO PARTICIPATE IN DISCOVERY REQUESTS OF DEFENDANTS COX ENTERPRISES, INC., AND COX MEDIA GROUP, INC. (DOC. #43); JUDGMENT SHALL ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF RENEA TURNER; TERMINATION ENTRY

---

Before the Court is the Motion for Summary Judgment or Dismissal for Failure to Participate in Discovery Requests of Defendants Cox Enterprises, Inc. ("Cox Enterprises") and Cox Media Group, Inc. ("CMG") (collectively "Defendants"). (Doc. #43). Defendants argue that Plaintiff Renea Turner's defamation claim fails as a matter of law. (*Id*. at PAGEID 375). In the alternative, Defendants argue that dismissal is the only appropriate sanction given Plaintiff's repeated and consistent refusals to participate in discovery. (*Id*. at PAGEID 381-82). For the reasons set forth below, the Motion is SUSTAINED.

I. **Factual Background and Procedural History**

A. **Motion for Summary Judgment**

On or about October 16, 2020, and again on October 22, 2020, a Paul Simmons contacted the City of Piqua, Ohio, Police Department ("Piqua PD"), first to inform about Plaintiff's supposed plot to conduct a citizens arrest of Governor Mike DeWine, and then to tell the Piqua PD that he feared retaliation by a pseudonymous ally of Plaintiff for Mr. Simmons's purported role in thwarting the plot against Gov. DeWine. (Doc. #43, PAGEID 372, citing J. Young Decl., Doc. 43-2, PAGEID 479, ¶¶ 5-6, PAGEID 491-95, 497-501). On October 22, 2020, Plaintiff appeared on the steps of the Ohio Statehouse, declaring Governor DeWine to be a tyrant and claiming that she had removed Gov. DeWine from the office and she had replaced him as Governor. (Compl., Doc. #1, PAGEID 2, ¶ 1; Doc. #43, PAGEID 371, citing R. Turner Book 1, pp. 89, 92).[1] Plaintiff published her declaration to Facebook and included it in *The Powerful Prey on the Powerless*; she also scheduled a press conference on October 26, 2020, due to the publicity she received. (*Id.* at PAGEID 3, ¶¶ 2-3; Doc. #43, PAGEID 371-72, citing Book 1, pp. 95-101). Meanwhile, the Piqua PD referred the matter to the Ohio State Highway Patrol ("OHSP"), which informed Plaintiff of the investigation and complaint on or about October 23, 2020. (*Id.* at ¶ 4).

---

[1] Defendants filed in hard copy two books authored by Plaintiff, THE POWERFUL PREY ON THE POWERLESS (Book 1, Ex. A), and THE FATHER BEHIND THE DAUGHTER (Book 2, Ex. B). (L. Gaither Decl., Doc. #43-1, PAGEID 385, ¶¶ 3-4).

2

Also on October 23, 2020, the *Springfield News-Sun* and *Dayton Daily News*, newspapers owned by Defendants, published an article, "Piqua resident reports plot to kidnap or arrest Ohio Gov. Mike DeWine" ("the Article"), (Doc. #43-2, PAGEID 483), authored by "Jordan Young, professionally known as Jordan Laird, with contribution from Kristen Spicker, regarding the two police reports and related events[.]" (Doc. #43, PAGEID 373, citing Doc. #43-2, p. 113/PAGEID 479, ¶¶ 3-4, pp. 117-22/PAGEID 483-88; K. Spicker Decl., Doc. #43-3 PAGEID 504, ¶¶ 2-6). Plaintiff does not dispute Defendants' recitation of the process by which the Article came to be published: on or about October 23, 2020, Ms. Spicker, in her capacity as a breaking news reporter for Defendants, was watching a press conference held by Gov. DeWine, during which he was asked "about an alleged plot to arrest him." (Doc. #43-3, PAGEID 504, ¶¶ 2, 4). Ms. Spicker told Ms. Young "about Governor DeWine's statement." (*Id.* at ¶ 5). Ms. Young spoke to Mr. Simmons, then-State Rep. John Becker, who had called Mr. Simmons a "hero" for reporting the alleged plot to the Piqua PD, Plaintiff herself, the Piqua PD, and the OHSP. Ms. Young also reviewed the Piqua PD police reports and, from Plaintiff's public Facebook page, a video of Plaintiff's October 22, 2020, declaration removing Gov. DeWine. (*Id.* at PAGEID 479-80, ¶¶ 5-12). Plaintiff was referred to in the article as follows: "The Springfield woman accused of the plot said Friday she 'absolutely' did not plan to kidnap the governor and refused to take further questions. The Dayton Daily News [*sic*] is not naming her because she has not been charged with a crime." (Doc. #43-2, PAGEID 485).

3

### B. Motion for Dismissal

Plaintiff filed suit on October 20, 2021. (Doc. #1). On March 15, 2022, Defendants filed a Motion to Dismiss (Doc. #10), which this Court overruled. (Decision and Entry, Doc. #25). On June 28, 2024, the Court issued a Preliminary Pretrial Conference Order containing a discovery cutoff of October 28, 2024. (Doc. #36, PAGEID 312). The discovery deadline was subsequently extended to December 28, 2024. (Amended Order, Doc. #40, PAGEID 360). Despite Defendants propounding written discovery upon her twice, Plaintiff failed to produce responses as of the end of December 2024. (Doc. #43, PAGEID 381-82, citing Doc. #43-1, PAGEID 385, 386, 387, ¶¶ 5, 7, 17). Plaintiff also twice failed to appear for a deposition. (Doc. 43-1, PAGEID 386, ¶¶ 13-16). In her memorandum *contra*, Plaintiff stated that she was hospitalized for an emergency procedure, which rendered her unable to appear for her deposition on the noticed date of December 30, 2024. (Doc. #48, PAGEID 684).

The matters are now ripe for decision.

## II. Legal Standards

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

4

of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings," and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the

evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. FED.R.CIV.P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, the court may also consider other properly presented materials in the record. FED.R.CIV.P. 56(c)(3).

**B.    Dismissal for Failure to Participate in Discovery**

As part of its inherent authority to manage its dockets, "Federal Rule of Civil Procedure 37(b)(2) authorizes a court to dismiss a case when a party has failed to obey an order regarding discovery." *Moses v. Sterling Comm. (Am.), Inc.*, 122 F. App'x 177, 182 (6th Cir. 2005). The United States Court of Appeals for the Sixth Circuit "reviews the dismissal of an action for failure to cooperate in discovery for an abuse of discretion." *Id.*, citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976); *Harmon v. CSX Transp., Inc.,* 110 F.3d 364, 366 (6th Cir. 1997).

6

> In assessing a district court's decision to dismiss a complaint, we consider four factors in particular: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Harmon*, 110 F.3d at 366-67 (internal quotation marks and citation omitted).

### III. Analysis

#### A. Motion for Summary Judgment

Plaintiff alleges that Defendants defamed her by publishing an Article that they knew was false and without sufficient investigation, and that the story falsely framed Plaintiff's actions as an attempt to "kidnap" Gov. DeWine. (Doc. #1, PAGEID 4, ¶¶ 10-16). Defendants argue that there were no knowing falsehoods in the Article, and that their framing of the situation as a plot to arrest or kidnap Gov. DeWine is a fairly accurate description of a matter of public concern, and, thus, is conditionally privileged under Ohio law. Moreover, they claim that actual malice—*i.e.*, clear and convincing evidence that the Article was published with either knowledge that the statement was false or reckless disregard for the truth—is the proper standard, rather than mere negligence, because Plaintiff is a public figure. (Doc. #43, PAGEID 380-81, citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154-55, 160 (1967); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 273, 279-80 (1964); *Condit v. Clermont Cnty. Review*, 93 Ohio App. 3d 166, 173 (12th Dist. 1994); Reply, Doc. #48, PAGEID 778, citing OHIO REV. CODE § 2317.05). Defendants assert that, because the authors did not publish the Article with actual

7

malice, the privilege cannot be rebutted, and the kidnapping framing cannot form the basis of a defamation claim. (Doc. #43, PAGEID 376-77, 379, quoting *Jacobs v. Frank*, 60 Ohio St. 3d 111, 116 (1991); citing *Dinkel v. Lincoln Publ'g (Ohio), Inc.*, 93 Ohio App. 3d 344, 346, 347 (12th Dist. 1994)).

For a defamation claim under Ohio law to survive summary judgment, a plaintiff must establish that: "(1) that a false statement of fact was made, (2) the statement was defamatory, (3) the organization published the statement, (4) the plaintiff was harmed as a proximate result of the publication, and (5) the organization acted with the requisite degree of fault in publishing the statement." *Am. Chem Soc'y v. Leadscope, Inc.*, 133 Ohio St. 3d 366, 2012-Ohio-4193, ¶ 77, quoting *Pollock v. Rashid*, 117 Ohio App. 3d 361, 368 (1st Dist. 1996). Whether a statement is defamatory is a question of law for the Court, *id*. at ¶ 78, quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 372 (1983), as is the question of whether a plaintiff is a public figure. *Ehrlich v. Kovack*, 135 F. Supp. 3d 638, 673 (N.D. Ohio 2015). "A public figure is a person whose position or activities thrust them into the center of an important public controversy. A limited purpose public figure is one who becomes a public figure for a specific range of issues by being drawn into or voluntarily injecting himself into a specific public controversy." (*Id*.) (citations omitted).

By Plaintiff's own admission, she publicly stated on October 22, 2020, that Gov. DeWine was acting as a tyrant with respect to state COVID-19 policies, and

8

that she had replaced him as Governor. (Doc. #1, PAGEID 2, ¶ 1; Book 1, pp. 89, 92, 95-101). She scheduled a public press conference at the Ohio Statehouse on October 26, 2020, to address her statements and the media coverage. (*Id.* at PAGEID 3, ¶ 2). Plaintiff's previous experience as a write-in candidate for Governor of Ohio (Doc. #43, PAGEID 369; Motion for Leave, Doc. #46, PAGEID 511) likely qualifies her generally as a public figure. However, the Court need not reach that issue, because, as a matter of law, Plaintiff voluntarily and publicly injected herself into the debate over the proper scope of governmental activity and authority during the COVID-19 pandemic. Plaintiff argues that the Court had already determined that she is a private person, rather than a public figure. (Memo. in Opp., Doc. #48, PAGEID 687, citing Decision and Entry, Doc. #25, PAGEID 273). Not so. The Court merely stated that at the motion to dismiss stage, "it would be inappropriate for the Court to rule on the merits regarding Plaintiff's legal classification. The only question before the Court at the pleading stage is whether Plaintiff has alleged both a classification and the corresponding degree of fault. The Court finds that she has." (Doc. #25, PAGEID 273).

Here, at the summary judgment stage, the Court has been presented with the above undisputed evidence of Plaintiff's repeated and notorious public pronouncements with respect to Gov. DeWine's actions and legal status, as determined by Plaintiff. Thus, Plaintiff is, at the very least, a limited public figure with respect the subject matter of the Article, and to prevail on her defamation

9

claim, Plaintiff must show by clear and convincing evidence that Defendants published the Article with actual malice.

Plaintiff claims that only the October 16, 2020, report "is the only Piqua Police Report that is able to be used in this lawsuit." (Doc. #48, PAGEID 685). In so claiming, Plaintiff appears to be arguing that the authors could not attempt to connect her with the "kidnapping" statement in the Article, since that statement only appeared in the October 22, 2020, report, and that latter report did not mention Plaintiff by name. Plaintiff cites no caselaw or other support for her facially implausible position that a reporter cannot attempt to synthesize distinct but related pieces of information in writing a story. *See generally Oney v. Allen*, 39 Ohio St. 3d 103, 106 (1988) (cleaned up) (The privilege afforded under OHIO REV. CODE §2317.05 affords "protection to variances from the verbatim record as long as the gravamen, gist, or sting or substance of the underlying proceeding or report is substantially correct."). Moreover, Defendants did not use Plaintiff's name anywhere in the Article, and, in the third paragraph, the authors accurately relayed Plaintiff's denial that she was involved in any plot to kidnap Gov. DeWine. (Doc. #43-2, PAGEID 485).

Thus, Plaintiff's only alleged inaccuracy is the Article's framing of there being a plot to kidnap Gov. DeWine.[2] (Doc. #43-2, PAGEID 484). However, the

---

[2] While Plaintiff argues that Defendants "are directly responsible in making the Plaintiff a Public Criminal Enemy as a kidnapper, kidnap and kill, kidnap and murder and Domestic Terrorist across the United States and the world," (Doc. #48, PAGEID 685), Defendants are correct that the words or phrases "kill," "murder," and "Domestic Terrorist" appear nowhere in the Article. (Doc. #50, PAGEID 778 n.2).

10

"plot" referred to in the Article was phrased in the disjunctive: "a plot involving a Springfield woman to arrest *or* kidnap Gov. Mike DeWine." (*Id*. (emphasis added)). Plaintiff does not dispute that the October 16, 2020, report details a purported plot to effect a citizens arrest upon Gov. DeWine, and that that report mentioned Plaintiff by name. (*Id*. at PAGEID 494). Thus, the Article's reference to a plot was not even inaccurate, much less published with reckless disregard for the truth. Consequently, Plaintiff's Complaint must be dismissed.

### B. Motion for Dismissal

As Defendants are entitled to judgment as a matter of law against Plaintiff, Defendants' alternative Motion for Dismissal (Doc. #43) is overruled as moot.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. #43) is SUSTAINED, and their alternate Motion for Dismissal for Failure to Participate in Discovery (Doc. #43) is OVERRULED AS MOOT. Judgment shall enter in favor of Defendants and against Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

IT IS SO ORDERED.

March 20, 2025

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT